IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARION G. TAVERNARIS, an individual, )
        Plaintiff, )
)
    vs )    Civil Action No. 07-127
)
CITY OF BEAVER FALLS, PA, a municipal )
corporation, CHIEF GARY MINNITTE, )
individually and as Chief of Police of the )
Beaver Falls Police Department; CAPTAIN )
JEFFREY BECZE, individually and as a )
Beaver Falls Police Officer; OFFICER )
THOMAS M. LOCOCO, individually and as )
Beaver Falls Police Officer, and OFFICER )
JOHN A. DELUCA, individually and as a )
Beaver Falls Police Officer, )
        Defendants. )

## REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendants' motion for summary judgment (Document No. 10) be granted.

II. Report:

Presently before the Court is a motion for summary judgment submitted by the defendants. For reasons discussed below, the defendants' motion for summary judgment should be granted.

The plaintiff, Marion G. Tavernaris, filed a civil rights complaint in the Court of Common Pleas of Beaver County, PA, alleging that the defendants deprived her of her right to be free from unfounded prosecution and deprived her of her property without due process of law in

violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Named as defendants are the City of Beaver Falls, PA (the "City"), its Police Chief Gary Minnitte, its Police Captain Jeffrey Becze, and its Police Officers Thomas Lococo and John DeLuca, all of whom are said to have violated the plaintiff's civil rights under 42 U.S.C. § 1983. The defendants filed a timely notice of removal to this Court, and it is not disputed that the Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

The record shows that in 1997, the plaintiff and Kenneth Lopez ("Lopez") purchased and jointly owned a house located at 807 Third Avenue in the City (the "property"). The plaintiff and Lopez resided at the property from the time they purchased it until November 25, 2003, when the plaintiff filed a protection from abuse petition ("PFA") against Lopez in the Court of Common Pleas of Beaver County. The plaintiff left the property to reside elsewhere, and on December 5, 2003, the Court of Common Pleas entered a Consent Order which amended the November 25, 2003 PFA to permit Lopez to have possession of the property.[1]

In August 2004, the plaintiff received a notice of taxes and believed Lopez had deserted the property.[2] The plaintiff contends that on August 20, 2004, in order to raise funds to pay real estate taxes and maintain the property, she entered into a property management agreement with Premier Properties Unlimited, LLC ("Premier"), under which Premier was to advertise and lease the property; that on September 26, 2004, Premier Manager John Gudzan showed the property to a woman who executed a lease application on behalf of her family (the

---

1. See, plaintiff's brief opposing the current motion at pp. 2-3 and defendants' statement of material facts at ¶ 2, citing to the record.

2. See, plaintiff's deposition at p. 20.

"lessees"); and that the lessees tendered a deposit to hold the property.[3]

On September 28, 2004 at approximately 11:00 a.m., the plaintiff went to the property with her son, and upon seeing Lopez there, she informed Lopez the property had been rented. Lopez then called the City Police Department, and when officers arrived, Lopez showed them the December 5, 2003 Consent Order. The officers told Lopez that he did not have a PFA order that banned the plaintiff from the property. Nonetheless, to avoid potential problems, the officers suggested that the plaintiff leave the property, which she did.[4]

Later that day, at approximately 4:00 p.m., the plaintiff returned to the property with Premier Manager John Gudzan. Lopez was there, and the plaintiff called the City Police Department.[5] The record shows that on September 28, 2004, an abandoned 911 call was made from the property. Police officers Burau and defendant Becze were en route to the property when they were advised that another call had been received from the property. When the officers arrived, Lopez was on the phone with his attorney. Lopez' attorney then spoke to Officer Burau and informed him of the following: that Lopez had returned from Florida and noticed that his belongings were missing from the property; that a neighbor had observed the plaintiff removing items from the property; and that a Consent Order dated December 5, 2003 granted Lopez possession of the property. Lopez showed the officers the Consent Order, whereupon defendant Becze advised the plaintiff to leave the property, which she started to do. Upon realizing that she left her purse in the property, however, the plaintiff started to re-enter the house to recover it.

---

3. See, complaint at ¶¶ 20, 22.
4. See, plaintiff's brief opposing the current motion at pp. 3-4, citing to the record.
5. Id. at p. 4.

3

Lopez then shut the door on the plaintiff's hand and prevented her from leaving. Captain Becze screamed at the plaintiff to leave the property or he would arrest her, at which point Lopez allowed her to remove her hand from the door, and she left.[6]

On September 28, 2004 at approximately midnight, Lopez contacted the City Police Department and reported a theft of the property. When officers arrived, Lopez spoke to defendant Officer Lococo and reiterated that he had been out of town for several days, and when he returned, he noticed that his belongings were missing from the property; that he believed the plaintiff was responsible for the theft, as his neighbor -- who knew the plaintiff when she resided at the property -- saw her removing items from it; and that he had a December 2003 Consent Order -- which he showed to Lococo -- granting him possession of the property.[7]

On September 29, 2004, Lopez obtained a temporary protection from abuse ("PFA") order against the plaintiff. That PFA order excluded the plaintiff from the property and prohibited her from having any contact with Lopez, including through third persons.[8] The plaintiff admits she was served with said PFA order on September 30, 2004, and she avers that from that date until at least October 28, 2004 when the PFA order was dismissed, she did not return to the property.[9]

---

6. See, defendants' statement of material facts at ¶¶ 5-6, Officer Burau's Police Report dated September 28, 2004, defendant Becze's deposition at p. 16, and plaintiff's deposition at pp. 33-35.

7. See, defendants' statement of material facts at ¶ 4, Officer Lococo's Police Report dated September 28, 2004, and plaintiff's deposition at p. 26.

8. See, defendants' statement of material facts at ¶¶ 7-8.

9. Id. at ¶¶ 9-10, and plaintiff's brief opposing the current motion at p. 5, citing to the record.

On September 29 or 30, 2004, upon learning of the PFA order obtained by Lopez, the plaintiff went to the City Police Station and spoke with defendant Police Chief Minnitte. The plaintiff believed she had legally rented the property to the lessees, and that Lopez had broken into their house; however, Chief Minnitte told her he believed she was trying to steal Lopez' house. Minnitte also told the plaintiff that the property was not hers and to stay away from it, because Lopez had obtained the PFA order. According to the plaintiff, Chief Minnitte threw her out of the police station and advised her never to come back, or she would be arrested.[10]

On October 2, 2004, Officer Couper of the Beaver Falls Police Department was dispatched to the property based on a report of a burglary there. When Officer Couper arrived, Lopez informed him that his basement door had been broken and his collectible knife was stolen. Lopez told Couper that he suspected it was the plaintiff and her son who broke into the property and stole his knife, and he advised Couper of the PFA order he obtained against the plaintiff.[11]

On October 2, 2004, a neighbor of Lopez stopped Police Officer Burau and informed him that earlier that morning, he observed two men sitting on Lopez' porch who appeared to be waiting for someone. Officer Burau went to the property to speak with Lopez about the incident, and Lopez told him that he believed the plaintiff's son and one of his friends broke into the property and changed the locks.[12]

Later that day on October 2, 2004, Officer Lococo was dispatched to the property

---

10. See, plaintiff's deposition at pp. 33-34, 37-38.

11. See, defendants' statement of material facts at ¶¶ 11-14 and Officer Couper's Police Report dated October 2, 2004.

12. Id. at ¶¶ 15-17 and Officer Burau's Police Report dated October 2, 2004.

in reference to a landlord-tenant dispute. Lopez was there, as were the lessees who claimed to have rented the property from the plaintiff pursuant to a rental agreement. Lopez refused to allow the lessees to enter the property, and officers advised the parties that it was a civil matter.[13]

On October 2, 2004, Officer Lococo went to the plaintiff's place of employment to speak with her about the situation. The plaintiff told Lococo that Lopez' PFA order of September 29, 2004 was invalid and did not prevent the lessees from moving into the property. Lococo testified that based on this conversation with the plaintiff, he assumed that she knew the lessees were attempting to move into the property. Lococo advised the plaintiff that it was a civil matter, and that officers could not remove Lopez from the property based on his PFA order, nor prevent the lessees from moving in.[14] The plaintiff testified that when Lococo spoke to her at her place of employment, she was not aware that the lessees had contacted Premier Manager Gudzan to help them gain access to the property and move in.[15]

On October 7, 2004, Lopez informed Officer Lococo that the night before, when he was lying in bed, he observed two males on the roof of his back porch, one of whom he identified as Premier Manager John Gudzan.[16] On October 7, 2004, at the direction of defendant Police Chief Minnitte, Officer Lococo arrested the plaintiff and filed a Complaint for Indirect Criminal Contempt of Court against her, accusing the plaintiff of violating the PFA order of

---

13. Id. at ¶¶ 18-20 and Officer Lococo's Police Report dated October 2, 2004.

14. Id. at ¶¶ 21-23, Officer Lococo's Police Report dated October 2, 2004, and Lococo's deposition at pp. 45-46.

15. See, plaintiff's deposition at p. 42.

16. See, defendants' statement of material facts at ¶¶ 24-25, citing to the record.

September 29, 2004. Lococo's aforesaid Complaint accused the plaintiff of "harassing [Lopez] via a third person" and of having "made several contacts through the third person." As a result of her arrest, the plaintiff was arraigned before Magisterial District Judge Iler. In a Court Order dated October 28, 2004, the PFA order of September 29, 2004 was dismissed, and the case against the plaintiff was dismissed with prejudice, with costs charged to Lopez.[17]

The plaintiff insists that defendants Lococo and Minnitte had no information or evidence to support a claim that the individuals who were at the property were acting on her behalf, or were there at her direction. Based on the facts recited above, the plaintiff argues that the defendants lacked probable cause to arrest her.

In Count I of her complaint, the plaintiff contends that the individual defendants violated her Fourth, Fifth and Fourteenth Amendment rights in these ways: by intentionally refusing to investigate the situation and arresting her without probable cause; arresting her for acts which did not reasonably give rise to the offense of indirect criminal contempt of court; depriving her of the enjoyment of the property; and intentionally interfering with her private right of contract. In Count II, the plaintiff makes similar claims against Police Chief Minnitte who is also said to have ordered her arrest and improperly denied her access to the City Police Station. In Count III, the City is said to have violated the plaintiff's civil rights by failing to provide adequate training and supervision to its police officers and maintaining a policy which led to her injuries.

The defendants have moved for summary judgment on all of the plaintiff's claims. With respect to Officer Lococo, the defendants argue that he had probable cause to arrest and

---

17. Id. at ¶¶ 26-27, Complaint for Indirect Criminal Contempt dated October 7, 2004, and plaintiff's brief opposing the current motion at p. 7, citing to the record.

charge the plaintiff with indirect criminal contempt of court for violating the PFA order of September 29, 2004, and he is entitled to qualified immunity. As to the other individual defendants -- DeLuca, Minnette and Becze -- the defendants aver that the plaintiff cannot establish that they had any involvement in her complained-of acts, or violated any of her civil rights, and that they too are entitled to qualified immunity. With respect to the City, the defendants argue that the plaintiff cannot establish that any of its police officers violated her civil rights, nor show it had a policy or practice which violated her rights.

Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movants are entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

In support of summary judgment, the defendants argue that the arrest and filing of charges against the plaintiff did not violate her constitutional rights, since probable cause existed that she violated the PFA order of September 29, 2004. The defendants cite 23 Pa.C.S.A. § 6113(a), which provides in relevant part:

> An arrest for violation of an order issued pursuant to this chapter or a foreign protection order may be without warrant upon probable cause whether or not the violation is committed in the presence of the police officer or sheriff in circumstances where the defendant has violated a provision of an order ...

The Fourth Amendment prohibits an officer from arresting a citizen except upon probable cause. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997), quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

While "[p]robable cause to arrest requires more than mere suspicion... it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti, supra, 71 F.3d at 482-83. Rather, "[p]robable cause exists if there is a fair probability that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). "If at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law, probable cause is present." Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000), quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991).

The defendants assert that shortly after the plaintiff was served with the PFA order of September 29, 2004, the City Police Department received several calls from Lopez which established probable cause that the PFA order was being violated through the conduct of third parties. Specifically, the defendants aver that the following incidents are indicative of probable cause that the plaintiff violated the PFA order: (1) on October 2, 2004, Lopez contacted the City Police Department to report that the property had been broken into, and that he suspected the plaintiff's son was involved, as the locks on the property had been changed; (2) later that day on October 2, 2004, two individuals who claimed to have leased the property from the plaintiff and Premier Manager John Gudzan were present on the property; and (3) on October 7, 2004, Lopez informed Officer Lococo that the night before, he was lying in bed and observed two males on the roof of his porch, one of whom he identified as Premier Manager John Gudzan who was working with the plaintiff to lease the property. The defendants argue that Officer Lococo had probable cause to believe that the plaintiff violated the PFA order through third parties based on the above

9

events, the volume of calls which the police received from Lopez, and the course of conduct between Lopez and the plaintiff which was reported to Officer Lococo and other officers prior to and after the imposition of the PFA order.

"Generally, the question of probable cause in a section 1983 damage suit is one for the jury, ... particularly ... where the probable cause determination rests on credibility conflicts." Merkle, 211 F.3d at 788. "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding". Id. at 788-89.

The Third Circuit Court of Appeals has held that an officer has probable cause to arrest a suspect based on a credible report from an eyewitness, or a credible statement from a victim of the crime. See, Merkle, supra, 211 F.3d at 790 (finding that officer had probable cause to arrest a teacher for theft by taking based on a credible report from the school principal who witnessed it); also see, Mitchell v. Obenski, 134 Fed.Appx. 548, 551 (3d Cir. 2005) (officer had probable cause to arrest a suspect for sexual assault based on the victim's credible account of the sexual assault); and Pardue v. Gray, 136 Fed.Appx. 529, 533 (3d Cir. 2005) (officer had probable cause to arrest a suspect on charges of harassment and stalking based on the victim's credible report of being stalked and harassed).

In the above cases, the plaintiffs argued that probable cause to arrest did not exist, as the officers failed to conduct an independent investigation to corroborate the allegations of misconduct. Our Court of Appeals has explained, however, that an officer "[is] not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle, 211 F.3d at 790, n. 8; accord, Pardue, 136 Fed.Appx. at 533. "[T]he

mere fact that a police investigation could have been more thorough does not vitiate probable cause." Obenski, supra, 134 Fed.Appx. at 551.

In this case, Kenneth Lopez obtained a September 29, 2004 PFA order against the plaintiff which prohibited her from contacting Lopez by any means, including through third persons. Based on Lopez' credible reports to the police of: (1) a break-in and theft at the property, wherein he suspected the plaintiff's son of changing the locks at the property, (2) Lopez' confrontation with persons claiming to be lessees of the property who sought to enter it based on their rental agreement with the plaintiff, and (3) Lopez' observation of third parties on the roof of his porch, one of whom he recognized as Premier Manager John Gudzan who worked with the plaintiff to lease the property, Officer Lococo had probable cause to believe the plaintiff violated the PFA order.

Having found that there was probable cause to arrest the plaintiff, we do not engage in a detailed discussion of qualified immunity. However, even assuming, arguendo, that probable cause to arrest did not exist in this matter, the individual defendants would be entitled to qualified immunity on the plaintiff's claims. Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991). Qualified immunity is available if "reasonable officials in their position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Larsen v. Senate of the

Commonwealth of PA, 154 F.3d 82, 87 (3d Cir. 1998). As discussed above, it was objectively reasonable for Lococo and Minnitte to conclude that probable cause existed to arrest the plaintiff for violating the PFA order based on the reports of Lopez who had obtained the PFA order.

With respect to defendants Becze and DeLuca, the record fails to show that they participated in filing charges and arresting the plaintiff for violating the PFA order. Clearly, "[a] defendant in a § 1983 action must have personal involvement in the alleged wrongs." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997). To the extent that Becze and DeLuca were involved with Lococo and Minnette in filing charges against the plaintiff and arresting her, they are entitled to qualified immunity for reasons discussed above.

Since the plaintiff has not shown that the individual defendants violated her constitutional rights, her § 1983 claim against the City for failing to train its officers and maintaining a policy which caused her injuries cannot lie.

Therefore, it is recommended that the defendants' motion for summary judgment (Document No. 10) be granted.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                    Respectfully submitted,

                    s/ ROBERT C. MITCHELL
                    United States Magistrate Judge

Dated: January 2, 2008